# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

Plaintiff-Appellee,

v

DALE ARTHUR KOEPKE,

Defendant-Appellant.

UNPUBLISHED
April 17, 2018

No. 337286
Iosco Circuit Court
LC No. 16-009897-FH

Before: O'BRIEN, P.J., and CAVANAGH and STEPHENS, JJ.

PER CURIAM.

Defendant appeals by right his conviction after a jury trial of second-degree criminal sexual conduct (intentional sexual touching of a child under 13 for sexual gratification) (CSC-II), MCL 750.520c(1)(a). Defendant was sentenced to 12 months in the county jail and five years' probation. We affirm.

This case arises from an incident that occurred on June 25, 2015, when the victim, 12-year-old HF, spent the weekend at her friend's house. HF eventually accused defendant, the fiancé of her friend's mother, of touching her vagina during the sleepover by putting his hand up her shorts while he sat between the girls watching videos on a tablet.

Before defendant's trial began, defendant filed a motion to disqualify the initial judge assigned to his case pursuant to MCR 2.003(C)(1)(a) and (b). Defendant asserted that Judge Myles was personally biased against him because Judge Myles had endorsed the prosecutor assigned to his case in an election for his seat. Without a hearing on the matter, Judge Myles entered an order disqualifying himself from defendant's case based on the "objective perceptions of the appearance of impropriety."

Thereafter, Judge Martin was assigned to defendant's case and sent a letter to defense counsel disclosing that he had also "endorsed the current prosecutor in her run for election to the circuit court bench." In the letter, Judge Martin also indicated that he had "assisted defense counsel in various attempts at office and [had] considered him a friend for longer than [he] ha[s] known the current prosecutor." Accordingly, Judge Martin concluded that he did not believe that his "long term friendship with either attorney in the matter will compromise [him] from completing [his] duties in this matter." Thereafter, defendant filed a motion to disqualify Judge Martin pursuant to MCR 2.003(C)(1)(a) and (b). Defendant asserted that Judge Martin was personally biased against him as Judge Martin had endorsed the prosecutor assigned to his case

-1-

in an election for Judge Myles's seat. Defendant pointed to newspaper and radio advertisements in which Judge Martin endorsed the prosecutor.

At a hearing on the matter, Judge Martin asked defense counsel if he really believed that defendant would not receive a fair and impartial trial if he presided over the trial. Defense counsel responded, "No. No, I didn't . . . you and I are friends. [The prosecutor] and I are friends. We all go back . . . we understand ethics . . . [but] it's not about me." Defense counsel indicated that he had explained to defendant that Judge Martin had previously endorsed him for a judgeship, that their friendship went "way back prior to law school," and that Judge Martin had previously represented defense counsel in a civil matter. Defense counsel reiterated that he knew that Judge Martin could "be fair" and "impartial," but stated that defendant did not "think [Judge Martin] can be fair." Judge Martin indicated that the outcome of the prosecutor's campaign for Judge Myles's judicial seat would not affect him in any way, that his friendship with defense counsel or the prosecutor would not influence his impartiality in this case, and he emphasized that he took an oath to be fair and impartial and intended to follow that oath. Accordingly, Judge Martin stated that he did not have any grounds to recuse himself from defendant's case and denied defendant's motion.

Defendant appealed the denial of his motion to the chief judge. At a hearing before the chief judge, defense counsel stated that it was "one hundred percent true that I don't believe that either Judge was biased towards me," but again stated that defendant had concerns regarding Judge Martin's impartiality. The chief judge found that there was no basis to disqualify Judge Martin and affirmed Judge Martin's denial of defendant's motion to disqualify. This appeal followed.

Defendant argues that the lower court erred in denying his motion to disqualify Judge Martin. Specifically, defendant argues that because Judge Martin publicly endorsed the prosecutor in defendant's case on a political campaign, he should have recused himself as the trial judge. We disagree. "When this Court reviews a decision on a motion to disqualify a judge, the trial court's findings of fact are reviewed for an abuse of discretion, while the application of the facts to the relevant law is reviewed de novo." *People v Wells*, 238 Mich App 383, 391; 605 NW2d 374 (1999). An abuse of discretion occurs when the decision is outside the range of reasonable and principled outcomes. *People v Babcock*, 469 Mich 247, 269; 666 NW2d 231 (2003).

Any party that challenges a judge for bias must overcome a heavy presumption of judicial impartiality. *Wells*, 238 Mich App at 391. Under MCR 2.003(C)(1), disqualification of a judge is warranted for reasons that include, but are not limited to, the following:

> (a) The judge is biased or prejudiced for or against a party or attorney.
>
> (b) The judge, based on objective and reasonable perceptions, has either (i) a serious risk of actual bias impacting the due process rights of a party as enunciated in *Caperton v Massey*, 566 US 868; 129 S Ct 2252; 173 L Ed 2d 1208 (2009), or (ii) has failed to adhere to the appearance of impropriety standard set forth in Canon 2 of the Michigan Code of Judicial Conduct.

Under MCR 2.003(C)(1)(a), a defendant must demonstrate that a judge is "actually biased against the defendant or his attorney." *People v Aceval*, 486 Mich 887, 888; 781 NW2d 779 (2010). In comparison, disqualification MCR 2.003(C)(1)(b) is focused on the appearance of impropriety and possible due process violations. See *Id.* at 889. To determine whether an appearance of impropriety exists, this Court considers " 'whether the [judge's] conduct would create in reasonable minds a perception that the judge's ability to carry out judicial responsibilities with integrity, impartiality and competence is impaired.' " *Id*. at 887, quoting *Caperton*, 556 US at 888. In terms of due process, a judge should be disqualified only in those "extreme cases," *People v Roscoe*, 303 Mich App 633, 647; 846 NW2d 402 (2014), in which, objectively viewed, "the probability of actual bias on the part of the judge or decision maker is too high to be constitutionally tolerable," *Caperton*, 556 US at 877.

In the present case, the record does not support that the trial judge was biased or prejudiced pursuant to MCR 2.003(C)(1)(a). While Judge Martin endorsed the prosecutor in her bid for judicial election, Judge Martin also previously aided defense counsel as a judicial candidate, eliminating any indication that Judge Martin favored one attorney over the other. Further, Judge Martin stated that he had no financial or other interest in the outcome of the prosecutor's election, assured both parties that his relationship with the prosecutor and defense counsel would not impact his behavior on the case, and asserted that defendant would get a fair trial. Moreover, defendant has not presented or identified any evidence supporting that, through Judge Martin's endorsement of the prosecutor, he somehow became personally biased against defendant or defense counsel. Given the express statement by Judge Martin and the heavy presumption that a judge is impartial, we see no reason to find any actual bias or prejudice. Thus, judicial disqualification was not required pursuant to MCR 2.003(C)(1)(a).

Further, viewing the facts objectively, disqualification was also not required under MCR 2.003(C)(1)(b). Again, while Judge Martin endorsed the prosecutor in her campaign for a judgeship, he previously aided defense counsel in his bid for a similar position. Further, Judge Martin disclosed this information to both parties beforehand to preserve the integrity of the proceedings and to keep all parties fully informed. Thus, Judge Martin's endorsement of the prosecutor as a judicial candidate did not demonstrate an appearance of impropriety. Indeed, reasonable minds would not expect such an endorsement to impair Judge Martin's ability to carry out his judicial responsibilities with integrity, impartiality, and competence because he had the same relationship with both the prosecutor and defense counsel. Moreover, this is not the type of "extreme" case where the probability of actual bias on the part of the judge is too high to be constitutionally tolerable. Compare *Caperton*, 556 US at 888 (finding the failure to recuse was error where a party made substantial monetary contributions to a judge's election campaign and "the probability of actual bias rises to an unconstitutional level"). Accordingly, the trial court did not abuse its discretion by denying defendant's motion for disqualification.

Defendant next argues that the prosecutor offered insufficient evidence to sustain his conviction. We disagree. This Court reviews claims of insufficient evidence de novo. *People v Lueth*, 253 Mich App 670, 680; 660 NW2d 322 (2002). "The standard of review is deferential: a reviewing court is required to draw all reasonable inferences and make credibility choices in support of the . . . verdict." *People v Nowack*, 462 Mich 392, 400; 614 NW2d 78 (2000). "It is for the trier of fact, not the appellate court, to determine what inferences may be fairly drawn from the evidence and to determine the weight to be accorded those inferences." *People v*

*Hardiman*, 466 Mich 417, 428; 646 NW2d 158 (2002). Any conflict in the evidence must be resolved in favor of the prosecution. *People v Terry*, 224 Mich App 447, 452; 569 NW2d 641 (1997).

To comport with due process, the prosecution must establish a defendant's guilt of each essential element of a criminal charge beyond a reasonable doubt. *People v Johnson*, 460 Mich 720, 723; 597 NW2d 73 (1999). Circumstantial evidence and the reasonable inferences arising from it are sufficient to support a criminal conviction. *Nowack*, 462 Mich at 400. A defendant is guilty of CSC-II if he engages in "sexual contact" with another person under certain defined circumstances, including if the other person is less than 13 years of age. MCL 750.520c(1)(a). "Sexual contact" is "the intentional touching of the victim's or actor's intimate parts or the intentional touching of the clothing covering the immediate area of the victim's or actor's intimate parts, if that intentional touching can reasonably be construed as being for the purpose of sexual arousal or gratification [or] done for a sexual purpose[.]" MCL 750.520a(q).

Here, the undisputed evidence showed that HF was less than 13 years of age when the incident occurred, and HF testified that defendant placed his hand up her shorts and on her vagina under her underwear while watching videos. Defendant contends that the prosecutor relied only on evidence from HF to sustain a conviction, and that evidence was insufficient because HF's testimony was inconsistent and uncorroborated, and she waited five weeks before reporting the incident to anyone. However, defendant's fiancé's daughter confirmed that the three had watched the videos as HF described. While defendant's fiancé's daughter denied seeing any sexual assault, the jury was entitled to believe HF's testimony, even assuming there were inconsistencies in her story. See *People v Milstead*, 250 Mich App 391, 404; 648 NW2d 648 (2002). Regardless, no corroboration of her testimony was required. MCL 750.520h. Further defendant now seems to attack HF's credibility by emphasizing the length of time she waited to report the incident. However, delayed disclosure is common in sexual abuse cases. See *People v Beckley*, 434 Mich 691, 716-17; 456 NW2d 391 (1990) ("[A] misconception concerning the child victim is the belief that when a child suffers an injury it will be reported immediately. However, postponement of disclosure is readily viewed by experts as consistent with the behavioral patterns of a child who has been sexually abused."). In any event, credibility is a matter for the trier of fact to decide. *People v Vaughn*, 186 Mich App 376, 380; 465 NW3d 365 (1990). Thus, the evidence, viewed in a light most favorable to the prosecution, supported defendant's conviction of CSC II.

Affirmed.

/s/ Colleen A. O'Brien
/s/ Mark J. Cavanagh
/s/ Cynthia Diane Stephens

-4-